O

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| BARBARA DICHTER, | Case No. CV 12-3384-JPR |
| Plaintiff, | |
| vs. | MEMORANDUM OPINION AND ORDER AFFIRMING THE COMMISSIONER |
| CAROLYN W. COLVIN, Acting Commissioner of Social Security,[1] | |
| Defendant. | |

## I.   PROCEEDINGS

Plaintiff seeks review of the Commissioner's final decision denying her application for Social Security disability insurance benefits ("DIB").  The parties consented to the jurisdiction of the undersigned U.S. Magistrate Judge pursuant to 28 U.S.C. § 636(c).  This matter is before the Court on the parties' Joint Stipulation, filed March 8, 2013, which the Court has taken under submission without oral argument.  For the reasons stated below,

---

[1]   On February 14, 2013, Colvin became the Acting Commissioner of Social Security.  Pursuant to Federal Rule of Civil Procedure 25(d), the Court therefore substitutes Colvin for Michael J. Astrue as the proper Respondent.

1

the Commissioner's decision is affirmed and this action is dismissed.

## II.   BACKGROUND

Plaintiff was born on February 6, 1946.   (Administrative Record ("AR") 80.)   She previously worked as a cashier, customer service representative, and accounting clerk.   (AR 39, 112.)

On January 11, 2008, Plaintiff filed an application for DIB. (AR 43.)   Plaintiff alleged that she had been unable to work since January 15, 2006, because of degenerative disc disease, sciatica, and arthritis.   (AR 105.)   Plaintiff also has diabetes. (AR 35.)   Her application was denied initially on July 16, 2008 (AR 43), and upon reconsideration on July 25, 2008 (AR 47-51).

On September 24, 2008, Plaintiff requested a hearing before an ALJ.   (AR 52-53.)   A hearing was held on February 18, 2010, at which Plaintiff, who was represented by counsel, appeared and testified; a vocational expert ("VE") also testified.   (AR 25-42.)   In a written decision issued on May 11, 2010, the ALJ determined that Plaintiff was not disabled.   (AR 15-21.)   On January 12, 2012, the Appeals Council denied Plaintiff's request for review.   (AR 5-7.)   This action followed.

## III. STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits.   The ALJ's findings and decision should be upheld if they are free of legal error and supported by substantial evidence based on the record as a whole. § 405(g); Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 842 (1971); Parra v. Astrue, 481 F.3d 742, 746 (9th Cir. 2007).   Substantial evidence means such

2

evidence as a reasonable person might accept as adequate to support a conclusion.  Richardson, 402 U.S. at 401; Lingenfelter v. Astrue, 504 F.3d 1028, 1035 (9th Cir. 2007).  It is more than a scintilla but less than a preponderance.  Lingenfelter, 504 F.3d at 1035 (citing Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006)).  To determine whether substantial evidence supports a finding, the reviewing court "must review the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion."  Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1996).  "If the evidence can reasonably support either affirming or reversing," the reviewing court "may not substitute its judgment" for that of the Commissioner.  Id. at 720-21.

## IV.   THE EVALUATION OF DISABILITY

People are "disabled" for purposes of receiving Social Security benefits if they are unable to engage in any substantial gainful activity owing to a physical or mental impairment that is expected to result in death or which has lasted, or is expected to last, for a continuous period of at least 12 months.  42 U.S.C. § 423(d)(1)(A); Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992).

### A.   The Five-Step Evaluation Process

The ALJ follows a five-step sequential evaluation process in assessing whether a claimant is disabled.  20 C.F.R. § 404.1520(a)(4); Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995) (as amended Apr. 9, 1996).  In the first step, the Commissioner must determine whether the claimant is currently engaged in substantial gainful activity; if so, the claimant is

not disabled and the claim must be denied.  § 404.1520(a)(4)(i).

If the claimant is not engaged in substantial gainful activity,

the second step requires the Commissioner to determine whether

the claimant has a "severe" impairment or combination of

impairments significantly limiting her ability to do basic work

activities; if not, a finding of not disabled is made and the

claim must be denied.  § 404.1520(a)(4)(ii).  If the claimant has

a "severe" impairment or combination of impairments, the third

step requires the Commissioner to determine whether the

impairment or combination of impairments meets or equals an

impairment in the Listing of Impairments ("Listing") set forth at

20 C.F.R., Part 404, Subpart P, Appendix 1; if so, disability is

conclusively presumed and benefits are awarded.

§ 404.1520(a)(4)(iii).  If the claimant's impairment or

combination of impairments does not meet or equal an impairment

in the Listing, the fourth step requires the Commissioner to

determine whether the claimant has sufficient residual functional

capacity ("RFC")[2] to perform her past work; if so, the claimant

is not disabled and the claim must be denied.

§ 404.1520(a)(4)(iv).  The claimant has the burden of proving

that she is unable to perform past relevant work.  <u>Drouin</u>, 966

F.2d at 1257.  If the claimant meets that burden, a prima facie

case of disability is established.  <u>Id.</u>  If that happens or if

the claimant has no past relevant work, the Commissioner then

bears the burden of establishing that the claimant is not

_____

[2]    RFC is what a claimant can still do despite existing
exertional and nonexertional limitations.  20 C.F.R. § 404.1545;
<u>see</u> <u>Cooper v. Sullivan</u>, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989).

4

1  disabled because she can perform other substantial gainful work
2  available in the national economy.   § 404.1520(a)(4)(v).   That
3  determination comprises the fifth and final step in the
4  sequential analysis.   § 404.1520; Lester, 81 F.3d at 828 n.5;
5  Drouin, 966 F.2d at 1257.

6       B.    The ALJ's Application of the Five-Step Process
7       At step one, the ALJ found that Plaintiff had not engaged in
8  any substantial gainful activity since January 15, 2006.   (AR
9  17.)   At step two, the ALJ concluded that Plaintiff had the
10 severe impairments of "lumbar disc disease and diabetes
11 mellitus."   (Id.)   At step three, the ALJ determined that
12 Plaintiff's impairments did not meet or equal any of the
13 impairments in the Listing.   (Id.)   At step four, the ALJ found
14 that Plaintiff retained the RFC to perform light work[3] but
15 "limited to frequent climbing of ramps and stairs; to occasional
16 climbing of ladders, ropes and scaffolds; and is further limited
17 to frequent balancing, stooping, kneeling, crouching, and
18 crawling."   (AR 18.)   Based on the VE's testimony, the ALJ
19 concluded that Plaintiff was able to perform her past relevant
20 work as an accounting clerk and customer-service representative,
21

22       [3]     "Light work" is defined as work involving "lifting no
   more than 20 pounds at a time with frequent lifting or carrying
23 of objects weighing up to 10 pounds."   20 C.F.R. § 416.967(b).
   The regulations further specify that "[e]ven though the weight
24 lifted may be very little, a job is in this category when it
   requires a good deal of walking or standing, or when it involves
25 sitting most of the time with some pushing and pulling of arm or
   leg controls."   Id.   A person capable of light work is also
26 capable of "sedentary work," which involves lifting "no more than
   10 pounds at a time and occasionally lifting or carrying [small
27 articles]" and may involve occasional walking or standing.
   § 416.967(a)-(b).
28

                                   5

which are both sedentary jobs.  (AR 20.)  At step five, the ALJ concluded that Plaintiff was not disabled.  (AR 21.)

## V.   DISCUSSION

Plaintiff alleges that the ALJ erred in (1) evaluating the opinions of her treating physicians and (2) evaluating her credibility.  (J. Stip. at 3.)  Neither contention warrants reversal.

### A.   The ALJ Properly Evaluated the Medical Evidence

Plaintiff contends that the ALJ failed to properly consider the RFC assessment of her treating physician, Dr. Petra Wong, and the treatment notes of treating anesthesiologist Dr. George Elkhoury.  (J. Stip. at 4-7, 11-12.)  Remand is not warranted on that basis, however, because the ALJ provided legally sufficient reasons for his evaluation of the medical evidence.

#### 1.   Applicable law

Three types of physicians may offer opinions in social security cases: "(1) those who treat[ed] the claimant (treating physicians); (2) those who examine[d] but d[id] not treat the claimant (examining physicians); and (3) those who neither examine[d] nor treat[ed] the claimant (non-examining physicians)."  Lester, 81 F.3d at 830.  A treating physician's opinion is generally entitled to more weight than the opinion of a doctor who examined but did not treat the claimant, and an examining physician's opinion is generally entitled to more weight than that of a nonexamining physician.  Id.

The opinions of treating physicians are generally afforded more weight than the opinions of nontreating physicians because treating physicians are employed to cure and have a greater

1  opportunity to know and observe the claimant.  Smolen v. Chater,
2  80 F.3d 1273, 1285 (9th Cir. 1996).  If a treating physician's
3  opinion is well supported by medically acceptable clinical and
4  laboratory diagnostic techniques and is not inconsistent with the
5  other substantial evidence in the record, it should be given
6  controlling weight.  20 C.F.R. § 404.1527(c)(2).  If a treating
7  physician's opinion is not given controlling weight, its weight
8  is determined by length of the treatment relationship, frequency
9  of examination, nature and extent of the treatment relationship,
10 amount of evidence supporting the opinion, consistency with the
11 record as a whole, the doctor's area of specialization, and other
12 factors.  20 C.F.R. § 404.1527(c)(2)-(6).

13     When a treating or examining doctor's opinion is not
14 contradicted by another doctor, it may be rejected only for
15 "clear and convincing" reasons.  Carmickle v. Comm'r, Soc. Sec.
16 Admin., 533 F.3d 1155, 1164 (9th Cir. 2008) (quoting Lester, 81
17 F.3d at 830-31).  When a treating or examining physician's
18 opinion conflicts with another doctor's, the ALJ must provide
19 only "specific and legitimate reasons" for discounting the
20 treating doctor's opinion.  Id.  Further, the ALJ "need not
21 accept the opinion of any physician, including a treating
22 physician, if that opinion is brief, conclusory, and inadequately
23 supported by clinical findings."  Thomas v. Barnhart, 278 F.3d
24 947, 957 (9th Cir. 2002); accord Batson v. Comm'r of Soc. Sec.
25 Admin., 359 F.3d 1190, 1195 (9th Cir. 2004).  The weight given an
26 examining physician's opinion, moreover, depends on whether it is
27 consistent with the record and accompanied by adequate
28 explanation, among other things.  20 C.F.R. § 404.1527(c)(3)-(6).

7

2.   <u>Relevant facts</u>

On March 25, 2010, after the hearing but before the ALJ issued his written decision, Plaintiff submitted to the ALJ copies of Dr. Elkhoury's treatment notes covering the period between April 2008 and January 2010.  (AR 286-349.)  The notes documented Plaintiff's receipt of spinal nerve block injections to treat her back pain.  (<u>See</u> <u>id.</u>)

Plaintiff first saw Dr. Elkhoury on April 2, 2008.  At that time he noted that Plaintiff had tenderness in her lumbar spine and buttocks, a positive straight-leg-raising test, spinal flexion of 15/90 and extension of 5/30, radicular distribution in her right leg, pain that was made worse with extension of her back and prolonged sitting and standing, and tenderness over facet area; all other test and examination results were within normal limits, however.  (AR 347-49.)

The records indicate that Plaintiff received her first injection from Dr. Elkhoury on May 15, 2008.  (AR 330-35.)  On that date Dr. Elkhoury completed a check-box form, indicating that Plaintiff had "severe" pain that was "made worse with" "extension/flexion of spine" and "prolonged sitting, standing, hyperextension, and walking."  (AR 330.)  He noted that Plaintiff had low-back pain that radiated to her right leg, which was aggravated by activity, stress, and walking and relieved by rest.  (AR 331.)  He noted that her flexion was 60/90 and extension was 20/30, her straight-leg-raising test was positive on the right and negative on the left, her gait was "steady" and "stable," and motor and sensory tests of the bilateral lower extremities were within normal limits.  (<u>Id.</u>)  He noted that she was taking

8

Gabapentin[4] and Advil for pain.   (Id.)

Dr. Elkhoury performed another injection on June 16, 2008. (AR 326.)  He again indicated that she had "severe" pain but noted that her condition had improved "90%" since her last visit. (AR 326-27.)  He noted that her pain was "severe" at the time of her visit but "mild" "during relief."  (AR 327.)  After completing the shots, Dr. Elkhoury referred Plaintiff back to her primary physician, Dr. Petra Wong, and noted that Plaintiff was "currently stable."  (AR 325.)

On December 2, 2008, Plaintiff visited Dr. Elkhoury for an evaluation.  He noted that her pain "during relief" was "moderate" but "pain now" was severe.  (AR 323.)  The file also contains an undated note that Plaintiff's "pain is better" and her next appointment was rescheduled to January 2009.  (AR 322.)

The next record of Plaintiff visiting Dr. Elkhoury is from September 9, 2009, when Plaintiff visited him for an evaluation and medication refill.  (AR 320-21.)  Dr. Elkhoury noted that Plaintiff's pain was "50%" relieved since her last visit, her activities were "stable," and her pain "during relief" was "moderate" but "pain now" – presumably before the shot – was "severe."  (AR 320.)  Plaintiff received another nerve block injection from Dr. Elkhoury on September 29, 2009.  (AR 316.)  He noted that her condition had improved "90%" since her last visit and her pain "during relief" was "mild" but "pain now" was

---

[4]    Gabapentin is an anticonvulsant medication that is used to treat nerve pain, among other things.  Gabapentin, MedlinePlus, http://www.nlm.nih.gov/medlineplus/druginfo/meds/a694007.html (last updated Mar. 25, 2013).

1  severe." (Id.)  He further noted that she responded to the
2  previous nerve block injections "with 90% improvement for 15
3  months." (AR 317.)  On December 17, 2009, Dr. Elkhoury's staff
4  received a message from Plaintiff stating that "her pain is
5  gone."[5] (AR 322.)

6      Plaintiff received another nerve block injection from Dr.
7  Elkhoury on January 25, 2010.  (AR 312.)  At that time he noted
8  that Plaintiff's "pain and disability level" was "severe" but her
9  condition had improved "50%" since her last visit, and her "pain
10 during relief" was "moderate" but "pain now" was "severe."  (AR
11 312-13.)  He noted that her spinal flexion was 40/90 and
12 extension was 10/30, motor and sensory tests of the bilateral
13 lower extremities were within normal limits, and her straight-
14 leg-raising test was negative on both sides.  (AR 313.)  Her
15 "current pain medications" were only "Advil (otc)" and her
16 "medication is well tolerated."  (Id.)

17     On February 20, 2008, Plaintiff's primary care physician,
18 Dr. Wong, wrote a letter to "Whom it May Concern," stating that
19 Plaintiff was "a candidate for permanent light duty with no
20 lifting more than 10 to 15 lbs with proper lifting techniques"
21 and "may need periods of time off work and having physical

22

23     [5]    Plaintiff argues that this note is dated December 2008,
24 not 2009.  (J. Stip. at 11.)  The year on the note appears to the
   Court to be "09" (see AR 322), but even if it were dated 2008 and
25 the ALJ erred in characterizing it as 2009 (AR 19), any error
   would be harmless because, as discussed herein, ample other
26 evidence in the record supported the ALJ's finding that the
   medical evidence showed Plaintiff's symptoms to have improved
27 with treatment.  See Stout v. Comm'r, Soc. Sec. Admin., 454 F.3d
   1050, 1055 (9th Cir. 2006) (ALJ's error harmless when
28 "inconsequential to the ultimate nondisability determination").

therapy should her back flare up." (AR 259-60.) Dr. Wong noted
that Plaintiff "is not yet permanently disabled from her lumbar
disc disease" and "is not [seeing] pain management or getting
epidural shots for pain control." (AR 260.)

On January 9, 2009, Dr. Wong filled out a Physical Residual
Capacity Questionnaire, stating that she had been seeing
Plaintiff since April 10, 2003, and had diagnosed Plaintiff with
lumbar disc disease. (AR 281.) Dr. Wong noted that Plaintiff's
prognosis was "fair"; she had increased lower-back pain when
walking more than two blocks, standing more than 15 to 20
minutes, or sitting for more than one hour; and her pain was
"constant" in her lumbar region and right leg. (AR 281.) She
identified the following clinical findings and objective evidence
supporting her diagnosis: an MRI showed "1-3 mm disc bul[g]es L3-
4, L4-5, L5-S1 with degenerative arthritis," "decreased range of
motion L5 spine," and positive straight-leg-raising test. (AR
281.) She noted that Plaintiff was treated with Advil and
Flexeril (a muscle relaxant) "when needed at bedtime," epidural
shots, and physical therapy. (AR 282.) She stated that
Plaintiff was not a malingerer and that "this patient is
permanently disabled from her lumbar disc disease." (Id.) She
wrote that Plaintiff could not "lift more than 10 lbs, no
bending, reaching, squatting, no sitting for more than 20
minutes, standing for more than 1 hr, or walking more than 2
blocks," and she "must rest from 20 [to] 60 minutes after these
activities and be able to lay down and rest for that time."
(Id.) She circled that Plaintiff's pain would interfere with
attention and concentration "frequently," and Plaintiff "often"

11

had "moderate limitation" in "the ability to deal with work
stress." (AR 282-83.) She stated that Plaintiff could walk two
blocks without rest and could sit one hour and stand 20 minutes
but "has to lay down for up to 1 hr before doing anything else."
(AR 283.) She checked that Plaintiff could sit, stand, and walk
for "less than 2 hours" in an eight-hour workday, needed to
include periods of walking during an eight-hour workday for 15
minutes "or more" every 20 minutes, and "if back pain worse has
to lay down for up to 1 hr before doing anything else." (Id.)
She stated that Plaintiff "needs job that will let her lay down
for 20 to 60 minutes if back pain worse" and needed unscheduled
breaks "for up to 1 hr each time if back pain severe." (Id.)
She stated that Plaintiff's legs needed to be elevated 90% with
prolonged sitting 100% of the time and Plaintiff needed a cane
"while engaging in occasional standing/walking."[6] (AR 284.) She
checked that Plaintiff could occasionally lift 10 pounds and had
"significant limitations" in doing repetitive reaching, handling,
or fingering such that she could use her hands to grasp, turn,
and twist objects 50% of the time, perform fine manipulations 70%
of the time, and reach five percent of the time.[7] (Id.) She
stated that Plaintiff could not bend or twist at all and would
likely be absent from work "more than three times a month." (AR

---

[6]    Plaintiff did not testify to using a cane (see AR 25-
39), and there does not appear to be any other indication in the
record that Plaintiff used a cane. (See also AR 121 (Plaintiff
answering "no" when asked if she "[wore] or use[d] any device to
assist in relieving pain or its effects").)

[7]    In February 2008, Plaintiff herself apparently
indicated that she had no limitations in reaching. (AR 102.)

284-85.)   She also noted that Plaintiff "is non insulin dependent diabetic at this time" and "[r]equires regular timely meals[, medications,] and time to keep doctors appointments and lab draw appointments."   (AR 285.)

### 3.   Analysis

In his written decision, the ALJ gave "great weight" to Dr. Wong's February 2008 letter finding Plaintiff capable of light work and less weight to her January 2009 RFC assessment.   (AR 19.)   The ALJ noted that contrary to Dr. Wong's RFC assessment, "the most recent treatment records substantiate that the claimant's pain was gone, requiring no more than Advil for management, she demonstrated a negative straight-leg raise, she was stable, and her physical examination was generally within normal limits."   (Id.)   The ALJ cited Dr. Elkhoury's notes in support of that statement.   (See id. (citing AR 313, 322).)   The ALJ also noted that after Plaintiff's first set of injections, in June 2008, she "was stable" and "was referred back to her primary care physician by [Dr. Elkhoury]."   (Id.)   He noted that Plaintiff's "pain evidently returned in November 2008 and she received additional epidural injections in December 2008 and September 2009 [(AR 297, 300)], but by December 2009, the claimant's pain was reportedly 'gone' [(AR 322)]."   (Id.)   He also noted:

> A recent January 2010 physical examination revealed that
> the claimant demonstrated reduced flexion and extension;
> however, the straight-leg raise was negative, motor and
> sensory tests of the bilateral lower extremities were
> within normal limits, range of motion was stable, muscle

13

1    strength was stable, and her gait was steady and stable
2    [(AR 313)].  Moreover, the only pain medication she was
3    taking is over-the-counter Advil, which was well-
4    tolerated (Id.).  As such, the objective medical record
5    fails to substantiate that the claimant's back pain is as
6    severe or limiting as alleged.
7    (AR 19.)

8    The ALJ did not err in evaluating Dr. Elkhoury's treatment
9    notes or Dr. Wong's 2009 RFC assessment.  Plaintiff initially
10   argues that the ALJ did not review Dr. Elkhoury's notes at all
11   (J. Stip. at 4-7), which, as Plaintiff later concedes, is clearly
12   not true (J. Stip. at 11; see AR 19).  Plaintiff in the
13   alternative argues that Dr. Elkhoury's notes substantiated,
14   rather than refuted, Dr. Wong's January 2009 RFC assessment.  (J.
15   Stip. at 4, 11-12.)  But as the ALJ correctly noted, Dr.
16   Elkhoury's January 2010 notes showed that Plaintiff's condition
17   had improved with treatment, her most recent straight-leg-raising
18   test was negative on both sides, motor and sensory tests of the
19   bilateral lower extremities were within normal limits on both
20   sides, her gait was steady and stable, and her level of activity
21   was stable.  (AR 19, 313.)  Inconsistency between Dr. Wong's RFC
22   findings and the objective evidence in the record, including Dr.
23   Elkhoury's later treatment notes and Dr. Wong's earlier
24   assessment, was a proper basis for the ALJ to reject Dr. Wong's
25   findings.  See Connett v. Barnhart, 340 F.3d 871, 875 (9th Cir.
26   2003) (treating doctor's opinion properly rejected when treatment
27   notes "provide no basis for the functional restrictions he opined
28   should be imposed on [claimant]"); Valentine v. Comm'r, Soc. Sec.

14

1   Admin., 574 F.3d 685, 692-93 (9th Cir. 2009) (contradiction
2   between treating physician's opinion and his treatment notes
3   constitutes specific and legitimate reason for rejecting treating
4   physician's opinion). Indeed, as noted earlier, Dr. Wong's
5   statements in her January 2009 RFC that Plaintiff needed a cane
6   and could reach only five percent of the time were apparently
7   contradicted by Plaintiff herself. (See AR 102, 121.) The ALJ
8   was entitled to reject the January 2009 RFC because it was
9   inconsistent with the record as a whole. See 20 C.F.R.
10  § 404.1527(c)(4) ("Generally, the more consistent an opinion is
11  with the record as a whole, the more weight we will give to that
12  opinion."); see also Arnold v. Astrue, No. EDCV 10-1609 JC, 2011
13  WL 2261058, at *7 (C.D. Cal. June 8, 2011) (ALJ entitled to
14  reject treating doctor's opinion that was not supported by
15  "plaintiff's statements or [by] the record as a whole" (citing
16  Bayliss v. Barnhart, 427 F.3d 1211, 1217 (9th Cir. 2005)));
17  Rollins v. Massanari, 261 F.3d 853, 856 (9th Cir. 2001) (ALJ
18  permissibly rejected treating physician's opinion when opinion
19  was contradicted by or inconsistent with treatment reports).
20      As the ALJ also correctly noted, by January 2010, according
21  to Dr. Elkhoury's notes, the only medication Plaintiff took for
22  her pain was over-the-counter Advil, and it was "well tolerated."
23  (See AR 19, 34, 313.)[8] The ALJ was entitled to reject Dr. Wong's
24  opinion to the extent the objective medical evidence showed that
25
26  _____
27      [8]    In 2008 it was noted that Plaintiff also took
    Gabapentin for her pain (see AR 120, 331), but she had apparently
28  discontinued that by 2010 (see AR 34, 313), which further
    indicated that her condition had improved.

Plaintiff's pain was effectively managed with conservative treatment. See, e.g., Rollins, 261 F.3d at 856 (ALJ may reject opinion of treating physician who prescribed conservative treatment yet opined that claimant was disabled); cf. Tommasetti v. Astrue, 533 F.3d 1035, 1040 (9th Cir. 2008) (ALJ may infer that claimant's "response to conservative treatment undermines [claimant's] reports regarding the disabling nature of his pain").

Plaintiff points to findings in Dr. Elkhoury's treatment notes that, if interpreted differently than by the ALJ, could lead to a different conclusion. (See J. Stip. at 4, 11.) But any conflict in the properly supported medical-opinion evidence was the sole province of the ALJ to resolve. See Thomas, 278 F.3d at 956-57.[9]  Reversal is not warranted on this basis.

    B.   The ALJ Did Not Err in Assessing Plaintiff's Credibility

Plaintiff argues that the ALJ failed to provide clear and convincing reasons for discounting her credibility. (J. Stip. at 12-15, 18-19.)  Because the ALJ did provide clear and convincing reasons supporting his evaluation of Plaintiff's testimony and

---

[9]    Moreover, Plaintiff argued to the Appeals Council that Dr. Elkhoury ultimately concluded that Plaintiff "would be limited to a reduced range of sedentary work." (AR 141.)  To the extent Dr. Elkhoury so opined, and to the extent the ALJ erred in rejecting that opinion, any error was harmless because the ALJ ultimately found that Plaintiff could perform her past relevant work as an accounting clerk and customer-service representative, which are both sedentary jobs accommodating the additional limitations the ALJ found.  (AR 20); see Stout, 454 F.3d at 1055 (ALJ's error harmless when "inconsequential to the ultimate nondisability determination").

those reasons were supported by substantial evidence in the record, reversal is not warranted on this basis.

### 1. Applicable law

An ALJ's assessment of pain severity and claimant credibility is entitled to "great weight." See Weetman v. Sullivan, 877 F.2d 20, 22 (9th Cir. 1989); Nyman v. Heckler, 779 F.2d 528, 531 (9th Cir. 1986). "[T]he ALJ is not required to believe every allegation of disabling pain, or else disability benefits would be available for the asking, a result plainly contrary to 42 U.S.C. § 423(d)(5)(A)." Molina v. Astrue, 674 F.3d 1104, 1122 (9th Cir. 2012). In evaluating a claimant's subjective symptom testimony, the ALJ engages in a two-step analysis. See Lingenfelter, 504 F.3d at 1035-36. "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment [that] could reasonably be expected to produce the pain or other symptoms alleged." Id. at 1036 (internal quotation marks omitted). If such objective medical evidence exists, the ALJ may not reject a claimant's testimony "simply because there is no showing that the impairment can reasonably produce the *degree* of symptom alleged." Smolen, 80 F.3d at 1282 (emphasis in original). When the ALJ finds a claimant's subjective complaints not credible, the ALJ must make specific findings that support the conclusion. See Berry v. Astrue, 622 F.3d 1228, 1234 (9th Cir. 2010). Absent affirmative evidence of malingering, those findings must provide "clear and convincing" reasons for rejecting the claimant's testimony. Lester, 81 F.3d at 834. If the ALJ's credibility finding is supported by substantial evidence in the record, the

1   reviewing court "may not engage in second-guessing."   Thomas, 278

2   F.3d at 959.

3          2.   Relevant facts

4          In what appears to be February 2008,[10] Plaintiff filled out

5   a Function Report stating that she had difficulty bending and

6   twisting to put on socks, pants, and underwear and to cut her

7   toenails; she could no longer squat or bend over, vacuum, change

8   beds, clean her bathtub, sweep, or dig holes to plant plants; she

9   could cook only meals that did not require her to stand at the

10  stove very long; she was unable to walk through the mall, on the

11  beach, or around the block because of back pain and "clicking of

12  joints"; she could not go bowling or "participat[e] in any

13  activity that requires running or walking great distances"; she

14  had difficulty sitting, standing, walking, kneeling, squatting,

15  climbing, bending, lifting, and sleeping because of back pain;

16  she was unable to sit in a desk chair longer than "15 min to 2 hr

17  max"; and she "cannot lift more than 5-10 lbs at a time."   (AR

18  99-102.)   She noted that her symptoms had not changed her ability

19  to, among other things, bathe, do her hair, do laundry, do

20  dishes, shop or do errands, handle money, drive, use public

21  transportation, visit friends, read, watch TV, listen to the

22  radio, participate in social activities, reach, use her hands, or

23  concentrate.   (Id.)

24         On May 26, 2008, Plaintiff filled out a Pain Questionnaire.

25  (AR 120-22.)   In it she noted that she had pain in her lower

26  back, right hip, and right leg that was "continuous and

27  ───────────────────

28      [10]    The Function Report is not dated, but the top of each
    page shows that it was faxed on February 7, 2008.   (AR 99-103.)

18

horrific." (AR 120.) She stated that the pain occurred "every day" "24/7" but was relieved with "about 30 minutes" of rest. (Id.) She stated that she took Gabapentin once a day and Advil "every 6 hours when needed"; the medicine "[did] ease the pain some what" "within 30 minutes." (Id.) She stated that she did not wear or use any devices to relieve her pain. (AR 121.) With respect to her daily activities, she stated that she was "unable to walk long distances, limit all shopping trips, unable to mop floors and find vacuuming to be very painful," and "[s]ometimes I won't drive if my right leg is extra painful." (Id.) She stated that because of her pain she was no longer able to exercise, garden, bicycle, bowl, browse "through shops for long periods of time," or "sit in a desk chair in front of a computer to do a day['] s work." (Id.) She stated that she had to stop activity and rest "within 10 min to 30 min if walking" because of her pain, and she was able to do "short shopping trips," walk "about a block," stand 15 to 30 minutes at a time, sit for an hour at a time, drive her own car, and do light housekeeping chores. (AR 122.) She noted that she needed assistance "gardening, vacuuming, sweeping, mop[p]ing floors, moving furniture, . . . lifting heavy objects, [and] carrying grocery bags." (Id.)

At the hearing, Plaintiff testified that she stopped working when she was laid off in June 2004; after that she attempted to take training classes "to be a medical biller and coder," but she dropped out in January 2006 because of her back pain. (AR 29-30.) She stated that she was treated with physical therapy, which "temporarily" helped but "didn't take all of the pain away," and with epidural injections. (AR 31.) She testified

19

1    that the injections helped "lessen[]" the pain for "about a year"
2    to "ease the pain and make life a little bit easier to live,"
3    improving her ability to perform daily activities, which included
4    reading, watching television, using the computer, and making
5    handmade seasonal wreaths.  (AR 31-32, 36.)  As to her postural
6    limitations, she stated that she could sit for about "15 minutes
7    or a half an hour" before needing to change positions and had to
8    lie down "periodically throughout the day" to relieve her back
9    pain.  (AR 33.)  She testified that she took "just Advil" for her
10   pain, which did not take the pain away but "help[ed] . . . dull[]
11   it."  (AR 34, 37-38.)  She stated that when she had the epidural
12   injections, which "help[] with the pain so much," she was able to
13   cut her dose of Advil from nine pills a day to six.  (AR 37.)

            3.   Analysis

15   The ALJ evaluated Plaintiff's credibility as follows:

16        The undersigned finds the claimant's allegations not
17        fully credible.   The claimant testified that she had
18        worsening back pain over the last couple of years that
19        has affected her ability to sit for long periods;
20        however, she also testified that she started receiving
21        epidural injections that help for one year before the
22        pain comes back, which is inconsistent with a severe and
23        markedly limiting impairment.    The claimant also
24        testified that she was told by Dr. Wong to lie down
25        periodically about two years ago when they discussed her
26        limitations; however, Dr. Wong's February 2008 letter,
27        which addressed her limitations, indicated that the
28        claimant could do light duty work without any suggestion

                                    20

in the letter, or in any of Dr. Wong's records,[11] that

she would need to lie down periodically during the day,

which diminishes her credibility. Moreover, the claimant

testified that she makes seasonal wreaths as a hobby

while sitting down and works at a computer doing e-mails

and searches.   The evidence of record thus fails to

support that the claimant's subjective complaints are as

severe or limiting as alleged and renders her allegations

less than fully credible.

(AR 19-20 (citation omitted).)

Reversal is not warranted based on the ALJ's alleged failure
to make proper credibility findings or properly consider
Plaintiff's subjective symptoms.   Again, Plaintiff largely
premises her argument on the ALJ's alleged failure to review all
of Dr. Elkhoury's treatment notes, contending that he therefore
necessarily failed to properly evaluate Plaintiff's credibility
because he did so without the full context of those notes.   (J.
Stip. at 14.)   As noted, Plaintiff has conceded that the factual
premise of this argument is wrong, and the ALJ did review all of
Dr. Elkhoury's notes.   (J. Stip. at 11; see AR 19.)

In any event, the ALJ provided clear and convincing reasons
for rejecting Plaintiff's subjective symptom testimony to the

---

[11]   The hearing took place in February 2010; thus, Dr.
Wong's February 2008 letter was written at almost exactly the
time Plaintiff claimed Dr. Wong had told her to lie down
periodically, and yet it does not include any such restriction.
Dr. Wong's January 2009 RFC finding does mention Plaintiff's
alleged need to occasionally "lay down" during the day to rest.
(AR 282-83.)

extent it was inconsistent with the RFC assessment.[12]   (AR 19-
20.)   Virtually all of the medical evidence with the exception of
Dr. Wong's January 2009 RFC finding – the rejection of which was
proper, as explained in Section A above – indicated that
Plaintiff was capable of performing light work.   As the ALJ
noted, the record – and Plaintiff's own testimony – showed that
Plaintiff's symptoms improved with treatment and were effectively
managed with over-the-counter pain medication.   (AR 19, 31-32,
34, 313.)   The ALJ properly discounted Plaintiff's subjective
testimony to the extent it conflicted with the medical record.
See Carmickle, 533 F.3d at 1161 ("Contradiction with the medical
record is a sufficient basis for rejecting the claimant's
subjective testimony."); Lingenfelter, 504 F.3d at 1040 (in
determining credibility, ALJ may consider "whether the alleged
symptoms are consistent with the medical evidence"); Burch v.
Barnhart, 400 F.3d 676, 681 (9th Cir. 2005) ("Although lack of
medical evidence cannot form the sole basis for discounting pain
testimony, it is a factor that the ALJ can consider in his
credibility analysis."); Kennelly v. Astrue, 313 F. App'x 977,
979 (9th Cir. 2009) (same); Tommasetti, 533 F.3d at 1040 (ALJ may
infer that claimant's "response to conservative treatment
undermines [claimant's] reports regarding the disabling nature of
his pain").

---

[12]   Although the record does contain some evidence of
malingering (see AR 269, 271 (examining doctor's finding that
Plaintiff only "partially credible" because "claimant's
allegations of the severity of impairment(s) are not fully
supported by the objective findings")), the Court has nonetheless
applied the clear and convincing standard.

22

1    Moreover, as the ALJ noted, Plaintiff admitted that she was
2  able to do a wide variety of daily activities, including making
3  seasonal wreaths and using the computer while sitting down,
4  shopping, doing errands, visiting friends and family, reading,
5  watching television, driving a car, and preparing quick meals.
6  (AR 19-20, 32-36, 100-02.)   That Plaintiff's allegations of
7  disabling pain were inconsistent with her daily activities was a
8  valid reason for the ALJ to discount her testimony.  See Bray v.
9  Comm'r of Soc. Sec. Admin., 554 F.3d 1219, 1227 (9th Cir. 2009)
10 (ALJ properly discounted claimant's testimony because "she leads
11 an active lifestyle, including cleaning, cooking, walking her
12 dogs, and driving to appointments"); Berry, 622 F.3d at 1234-35
13 (holding that when claimant "told medical staff he engaged in
14 daily walks of a mile or more, had various social engagements,
15 drove his car and did crossword puzzles, computer work, pet care,
16 cooking, laundry and other house-keeping," ALJ properly
17 discounted claimant's credibility based on "inconsistencies in
18 [claimant's] reported symptoms and activities"); Molina, 674 F.3d
19 at 1113 ("Even where [claimant's] activities suggest some
20 difficulty functioning, they may be grounds for discrediting the
21 claimant's testimony to the extent that they contradict claims of
22 a totally debilitating impairment.").

23    Because the ALJ gave clear and convincing reasons for his
24 credibility finding and those reasons were supported by
25 substantial evidence, the Court "may not engage in
26 second-guessing."   Thomas, 278 F.3d at 959 (citation omitted).
27 Plaintiff is not entitled to reversal on this claim.
28

## VI.   CONCLUSION

Consistent with the foregoing, and pursuant to sentence four of 42 U.S.C. § 405(g),[13] IT IS ORDERED that judgment be entered AFFIRMING the decision of the Commissioner and dismissing this action with prejudice.   IT IS FURTHER ORDERED that the Clerk serve copies of this Order and the Judgment on counsel for both parties.

DATED: April 23, 2013

# JEAN ROSENBLUTH

JEAN ROSENBLUTH
U.S. Magistrate Judge

---

[13]   This sentence provides: "The [district] court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."